MITCHELL, ADMR., APPELLEE, *v.* LAWSON MILK COMPANY, APPELLANT.

[Cite as Mitchell *v.* Lawson Milk Co. (1988), 40 Ohio St. 3d 190.]

(No. 87-2099—Submitted November 2, 1988—Decided December 30, 1988.)

Matan & Smith, James D. Colner, Gallon, Kalniz & Iorio Co., L.P.A., and Theodore A. Bowman, for appellee.

Smith & Schnacke Co., L.P.A., James J. Gilvary and Scott A. King, for appellant.

H. BROWN, J. The central issue is whether the complaint sets forth a claim of intentional tort showing that appellee is entitled to relief, sufficient to survive a Civ. R. 12(B)(6) motion to dismiss. For the reasons that follow, we hold that it does not.

**A**

Subsequent to the court of appeals' decision in the case herein, we announced a series of decisions involving allegations of intentional torts committed by employers and the applicability of R.C. 4121.80(G)(1) to such causes of action. *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489; *Pariseau* v. *Wedge Products, Inc.* (1988), 36 Ohio St. 3d 124, 522 N.E. 2d 511; and *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 522 N.E. 2d 477. We determined that Section 28, Article II of the Ohio Constitution precludes the retroactive application of R.C. 4121.80(G)(1) to intentional tort causes of action arising prior to August 22, 1986, the effective date of the statute. *Kunkler, supra,* at 138, 522 N.E. 2d at 480; *Van Fossen, supra,* at 109, 522 N.E. 2d at 498. The cause of action in the case herein arose on or about January 16, 1985. Thus, we measure the sufficiency of appellee's claim of in-

tentional tort against the standard first set forth in *Blankenship* and *Jones* and explained in *Van Fossen, Pariseau* and *Kunkler.*

**B**

In *Van Fossen, supra,* at paragraph five of the syllabus, and *Kunkler, supra,* we implicitly adopted, for purposes of defining an intentional tort in Ohio, the definition of "intent" contained in 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A ("Restatement"). That section states:

"The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."

We noted the difference between causes of action sounding in negligence, recklessness and intentional tort. *Van Fossen, supra,* at 114-117, 522 N.E. 2d at 502-504; *Kunkler, supra,* at 138-139, 522 N.E. 2d at 481. In order to establish an intentional tort, a plaintiff must show proof beyond that required to establish negligence and beyond that required to establish recklessness. When the employer acts despite the knowledge of some risk, the employer's conduct may be negligent. When the risk is great and the probability increases that certain consequences may follow, the employer's conduct may be reckless. As the probability that certain consequences will follow further increases *and the employer knows that injury to employees is certain, or substantially certain, to result from his act, and he still proceeds, he is treated by the law as if he had in fact desired to produce the result.* Mere knowledge and appreciation of a risk, however, falls short of substantial certainty and does not by itself establish intent. *Van*

192

*Fossen, supra,* at paragraph six of the syllabus; *Kunkler, supra,* at 139, 522 N.E. 2d at 481; Comment *b* to Section 8A of the Restatement. With this in mind, we turn to the facts of the case before us to determine whether the complaint alleges a claim showing that appellee is entitled to relief.

### C

The facts alleged in the complaint are[2]:

(1) While working alone at night in a Lawson convenience store, Mary was fatally shot by an assailant;

(2) the store contained no alarms, protective glass, cameras or other security devices; and

(3) Lawson had provided no training or instruction in handling violent situations to Mary.

The complaint concludes that Lawson knew or should have known that its employees were subject to armed robberies and other violent acts and that by requiring Mary to work under the above conditions, Lawson "engaged in willful, wanton and inten-

tional misconduct and * * * knew, or should have known, that injury was substantially certain to occur."

In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. 2A Moore, Federal Practice (1985) 12-63, Paragraph 12.07[2.-5]; accord *State, ex rel. Alford,* v. *Willoughby Civil Serv. Comm.* (1979), 58 Ohio St. 2d 221, 223, 12 O.O. 3d 229, 230, 390 N.E. 2d 782, 785. Then, before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus.

Taking the *facts* of the complaint as true and construing them in appellee's favor, those facts fail to establish a claim for intentional tort. The facts are easy to grasp and are undisputed: a death resulted from the hold-up of a convenience store. Even if

---

[2] Relevant paragraphs of appellee's complaint state that:

"5. At roughly between 9:00 P.M. and 10:00 P.M. on or about January 16, 1985, while working alone at the Lawson store located at the above address, Mary A. Mitchell was repeatedly shot by a consumer or business invitee which resulted in her death.

"6. No alarm system, motion detectors, cameras, silent alarm to police and regional manager, protective glass, one-way doors or any other adequate means of security was provided at Lawson's store location thus creating a situation where injury to employees was substantially certain to occur.

"7. No training or instruction had been provided to Mary A. Mitchell by defendant Lawson as to procedures or methods of protections from physical violence or assailants.

"8. The defendant Lawson knew, or should have known, that its employees working in their convenience stores, including Mary A. Mitchell, are subject to armed robberies, assaults, and other acts of physical violence, especially so during the hours and under the conditions worked by Mary A. Mitchell.

"9. The defendant, in requiring Mary A. Mitchell to work in unsafe conditions, alone, and without any reasonable means of security and without any training or instruction in handling violent situations at the defendant's convenience store, engaged in willful, wanton and intentional misconduct and the defendant knew, or should have known, that injury was substantially certain to occur.

"10. On January 16, 1985, as a direct and proximate result of the defendant's willful, wanton and intentional misconduct, Mary A. Mitchell died."

Lawson failed to equip its stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime-rate area.

Unsupported *conclusions* that appellant committed an intentional tort are not taken as admitted by a motion to dismiss and are not sufficient to withstand such a motion. See *Schulman* v. *Cleveland* (1972), 30 Ohio St. 2d 196, 198, 59 O.O. 2d 196, 197, 283 N.E. 2d 175, 176. This principle is important in resolving claims of intentional tort against an employer. Virtually every injury in the workplace can be made the basis for a claim of intentional tort if the unsupported conclusion that the employer intended to injure the employee is allowed to prevail over factual allegations which preclude the possibility of intentional tort. We do not serve the interest of employees, employers or the administration of justice in the already over-docketed courts of Ohio if we permit claims to go forward which, on the face of the pleading, have no chance of success.[3]

We hold that a claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still pro-

ceeded. *Van Fossen* v. *Babcock & Wilcox Co., supra; Pariseau* v. *Wedge Products, Inc., supra;* and *Kunkler* v. *Goodyear Tire & Rubber Co., supra,* construed.

Given the facts pleaded in the complaint, we believe that it is not possible for appellee to prove an intentional tort under the standard set forth in *Van Fossen, Kunkler* and *Pariseau.* Thus, the complaint must be dismissed. *O'Brien, supra.*

Accordingly, the judgment of the court of appeals is affirmed with respect to its ruling concerning R.C. 4121.80(G)(1). The judgment of the court of appeals is reversed with respect to its ruling that the complaint states a cause of action and, for the reasons stated herein, the trial court's dismissal of the complaint is reinstated.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs in the judgment and syllabus.

DOUGLAS, J., concurring in judgment and syllabus. I am pleased to have the majority, today, adopt the suggestion I made in my dissenting opinion in *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, regarding Civ. R. 12(B)(6) motions in intentional tort cases. I regret that we do not yet take the further step I suggested regarding Civ. R. 56 motions in intentional tort

---

[3] While the facts of this complaint permit a disposition under Civ. R. 12(B)(6), the more complete consideration afforded under Civ. R. 56 (summary judgment) would avoid problems which arise when it is difficult to distinguish "unsupported conclusions" from "facts" in a pleading.

cases. This is especially so given fn. 3 of the majority opinion.

In my dissent in *Van Fossen,* I said, in part:

"This case and many like it have been filed alleging intentional torts when there is no legal or factual basis to support such claims. Some, obviously, have been filed to prevent future claims of legal malpractice. Some have been filed in the hope that the cost of defense will bring about some settlement. Some have been filed on the theory of 'what can it hurt?'

"Well, it does hurt! To have a case like this reach this level entails substantial litigation costs — both to the parties and to the courts. This pattern is being followed over and over again. There should be a definitive answer from *this court to terminate this practice. I have two suggestions that I would hope a majority of this court would adopt in some future case.*

"* * *

"* * * [T]o place an employer in a position of having to extensively defend an 'intentional tort' case which is based upon nebulous theories and speculations is * * * not a just result. The cost of defense alone is enough to seriously damage some employers. This is especially so since this court, by a split vote, has decided that employers may not insure themselves against liability for intentional torts. * * * [Citation omitted.]

"To aid our trial and appellate courts in granting and upholding Civ. R. 12(B)(6) and 56 motions, in proper cases, I would hold that a pleading alleging an intentional tort must contain operative facts pled with particularity, much the same as is required by Civ. R. 9(B) for fraud. In the case of intentional tort pleadings, this would require (and permit) the trial court to make a more detailed examination than is required or permit-

ted by *O'Brien* v. *University Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. Those cases that fall short on facts indicating that an intentional tort was committed could be dismissed without loss of further time or expense.

"For those cases which survive a Civ. R. 12(B)(6) motion under this standard, I would require a heightened review on summary judgment akin to that which we require in defamation cases. In cases of libel, courts, both trial and appellate, are required to construe all the evidence under a heightened standard of review. *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 31 OBR 250, 509 N.E. 2d 399; *Varanese* v. *Gall* (1988), 35 Ohio St. 3d 78, 80-81, 518 N.E. 2d 1177, 1180-1181. This would lend more credence to those cases where an intentional tort has, in fact, been committed and would better assure coherent appellate review.

"Finally, if either or both of these proposals were adopted, I would make them prospective only." (Emphasis added.) *Id.* at 123-124, 522 N.E. 2d at 509-510.

The majority adopts the foregoing with regard to Civ. R. 12(B)(6) motions. Apparently, preferring to go slowly, we do *not go* the next step and provide for "heightened review" or scrutiny for Civ. R. 56 motions in such cases. I am confident that we will do so when next the opportunity presents itself, especially given the comments in fn. 3 of the majority opinion.

Finally, I think it is the better practice that when sweeping changes are made in substance or procedure, such changes be given only prospective effect. It appears highly unlikely that appellee could allege and plead facts that would meet the conditions that we

set forth herein and in our other recent pronouncements on the subject. Nevertheless, we cannot be sure nor will the courts of appeals and the trial courts faced with the issue be certain that every pleader would be unable, by an amended pleading, to meet the standards we announce today. Therefore, the better procedure would be to allow an opportunity, where desired by a pleader, to amend pleadings in pending intentional tort cases and then test the amended pleadings by a Civ. R. 12 (B)(6) motion based upon the rule promulgated by today's case. I think this would prevent much confusion and extensive appellate review that is certain to come, given this new rule, whether pending cases are dismissed or are allowed to proceed.