[Cite as *Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2025-Ohio-4353.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Thomas E. Brinkman, Jr. | Court of Appeals No. L-24-1274 |
| Appellant | Trial Court No. CI0202401773 |
| v. | |
| Board of Education of the Toledo City School District, et al. | **DECISION AND JUDGMENT** |
| Appellee | Decided: September 16, 2025 |

* * * * *

Curt C. Hartman and Christopher P. Finney, for appellant.

Jennifer J. Dawson, Amy M. Natyshak, Shawn A. Nelson, and Rebecca Marcus-Nicholls, for appellee.

* * * * *

**ZMUDA, J.,**

## I. Introduction

{¶ 1} Appellant, Thomas Brinkman, Jr., appeals from the November 13, 2024 judgment of the Lucas County Court of Common Pleas granting appellees' motion for judgment on the pleadings. For the following reasons, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} The dispute underlying this appeal occurred on September 29, 2023. On that date, appellees, the Board of Education of the Toledo School District and its members—Randall Parker, Robert Vasquez, Sheena Barnes, Polly Taylor Gerken, and Christine Varwig[1]—conducted a special meeting pursuant to R.C. 121.22(F). The stated purpose of the special meeting was to consider whether the Board should join pending litigation filed by the State of Ohio Board of Education. The State Board's litigation challenges the constitutionality of Ohio House Bill 33—a statute that appellant alleged "overhaul[ed]" Ohio's "K-12 educational system."[2] At the onset of the special meeting, the Board immediately moved into executive session to "conference with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action."

{¶ 3} Following its return from the executive session to the public portion of the meeting, the Board passed two resolutions relevant to this appeal. First, the Board unanimously passed Resolution No. 338-2023, identified as a "Resolution Supporting State Board of Education Litigation to Preserve Local Control." The Board then unanimously passed Resolution No. 339-2023, identified as a "Resolution to Join State

---

[1] We refer to individual appellees and the Board as an entity, collectively, as "the Board" unless individual identification is necessary as part of our analysis.

[2] The merits of the pending litigation are unrelated to the claims underlying this appeal.

2.

Board of Education Litigation Opposing the Unconstitutional Takeover of Public Education."

{¶ 4} The day after the meeting, Board president Sheena Barnes executed retention letters with the law firm Ulmer & Berne ("UB") and with an organization known as the Democracy Forward Foundation ("DFF"). The retention letters provided that UB and DFF would provide joint legal representation of the Board and other named parties to the pending litigation. The retention letters also specified that the Board would not be obligated to compensate UB or DFF for any work performed on its behalf. On October 1, 2023, UB and DFF filed an amended complaint in the State Board of Education's pending litigation adding the Board as a plaintiff.

{¶ 5} On March 13, 2024, appellant filed a complaint in the Lucas County Court of Common Pleas alleging that the Board violated Ohio's Open Meetings Act ("OMA") by discussing and acting on matters during the executive session beyond the permissible subjects identified in R.C. 121.22(G). Specifically, appellant alleged that the Board privately resolved to authorize the retention of UB and DFF and to authorize Barnes to sign engagement letters with UB and DFF during the executive session rather than during the public session of the meeting.[3] Appellant concluded that because the Board did not publicly pass a resolution for these two actions as reflected by the meeting minutes

_____

[3] Appellant also alleged that the Board violated the act by having a guest attend the executive session without identifying that guest in the prepared meeting minutes. Appellant expressly declined to appeal the trial court's judgment against him on this alleged violation of the OMA.

attached to the complaint, that those actions could only have occurred through resolutions passed during the executive session, conduct that would violate the OMA. Appellant sought an injunction to prevent the Board from continuing its alleged violation of the OMA and a finding that all actions allegedly taken during the executive session be declared void.

{¶ 6} The Board filed its answer to the complaint on May 15, 2024. In its answer, the Board admitted the general facts alleged in the complaint regarding the dates of the meeting, its moving into and exiting executive session during the meeting, the passage of resolutions during the meeting, and Barnes' execution of the retention letters the following day. The Board did not challenge the accuracy of documents attached to the complaint.[4] The Board expressly denied that its retention of UB and DFF, and Barnes's execution of the retention agreements, were the result of any business conducted during the executive session or constituted a violation of the OMA.

{¶ 7} The Board filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), on August 16, 2024. It sought dismissal of appellant's claim, arguing that appellant could prove no set of facts based on the pleadings that would entitle him to relief. In support of its motion, the Board argued that appellant's claim for relief alleging that it could only have determined to retain counsel during the executive session could not be proven because it was not required to resolve to retain outside counsel to represent

---

[4] The Board repeatedly stated that the documents speak for themselves and that no response to the incorporation of the document was required.

it in the pending litigation.[5]  Instead, the Board's answer incorporated a pre-existing Board policy ("blanket purchasing policy") that authorized its president to enter into purchase agreements for various vendors, including attorneys, as long as the amount owed does not exceed a certain monetary threshold established by the Board.  It argued that because the retention agreement with UB and DFF required no payment for services, that the agreements were within the threshold amount and the retention of outside counsel was valid under the blanket purchasing policy without express resolution of the Board.

{¶ 8} In his opposition, appellant argued that R.C. 3313.35 obligated the city law director to represent the Board and that if it chose to retain outside counsel, it could only do so through a resolution identifying that counsel.  Since the meeting minutes did not reflect a resolution to retain counsel, appellant continued, the resolution to retain outside counsel could only have occurred during the executive session in violation of the OMA. He argued that these facts, alleged in the complaint, were sufficient to state a claim upon which relief could be granted.

{¶ 9} On November 13, 2024, the trial court granted the Board's motion.  It held that because R.C. 309.08 and 309.09 authorized the Board's retention of outside counsel

---

[5] The Board also argued that Resolution 339-2023 expressly authorized the retention of counsel.  The plain language of the resolution offers no support for this assertion.  The trial court rejected this argument as the plain language of the resolution makes no reference to the retention of counsel.  The Board renewed this argument on appeal. Because we resolve this appeal on other grounds, we do not address this argument.

that the Board acted within the scope of its blanket purchasing policy[6] to enter into the retention agreements. Upon reviewing the pleadings, the trial court found that appellant had not alleged any facts that would show the Board violated the previous policy, that the blanket policy was inapplicable to the underlying conduct, or that the Board violated any applicable statute by retaining outside counsel. As a result, the pleadings showed that appellant could prove no set of facts on which the trial court could grant relief for the alleged violation of the OMA and the trial court granted judgment in the Board's favor.

### III. Assignments of Error

{¶ 10} Appellant timely appealed and asserts the following error for our review:

The trial court committed reversible error in entering the decision and judgment entry granting defendants' motion for judgment on the pleadings.

### IV. Law & Analysis

{¶ 11} In his single assignment of error, appellant argues that the trial court erred in granting the Board's motion for judgment on the pleadings because it purportedly required the allegation of additional facts beyond those necessary to prove his claim. Specifically, appellant argues that the trial court erroneously required him to allege facts showing that the Board's blanket purchasing policy was inapplicable, or that the Board

---

[6] In its judgment entry, the trial court took "judicial notice" of the blanket purchasing policy since the Board referenced the policy through a website link identifying all Board policies but did not attach a copy to its answer. We note that the trial court's judicial notice of the policy was unnecessary as the Board properly incorporated the policy by reference in its answer. Material incorporated into a pleading may be considered as part of the pleading for ruling on dispositive motions. *See Boyd v. Archdiocese of Cincinnati,* 2015-Ohio-1394, ¶ 14 (2d. Dist.), citing *Irvin v. Am.Gen. Inc.,* 2005-Ohio-3523, ¶ 6 (5th Dist.) ("The incorporated material need not be attached to the [pleading]").

6.

violated the policy or applicable statutes when it retained outside counsel. He argued that the allegations in his complaint clearly showed a violation of the OMA because the Board *had to have* conducted business during the executive session and that additional facts regarding the blanket purchasing policy were irrelevant to that claim. For the reasons described herein, we find that the Board was entitled to judgment as a matter of law.

{¶ 12} The standard for a trial court's review of a Civ.R. 12(C) motion for judgment on the pleadings is the same as a Civ.R. 12(B)(6) motion to dismiss for failing to state a claim on which relief can be granted. *Walker v. City of Toledo,* 2017-Ohio-416, ¶ 18 (6th Dist.). Thus, the trial court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Id.,* citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190 (1988). "In ruling on the motion, a court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Id.,* citing *Frazier v. Kent*, 2005-Ohio-5413 (11th Dist.). "In so doing, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party. A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Id.* Because a Civ.R. 12(C) motion tests the legal basis for the claims asserted in a complaint, our standard of review is de novo, applying the same standard as the trial court. *Id.*, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, (1996).

7.

{¶ 13} The relevant facts appellant alleged in his complaint are undisputed. That is, the Board held a special meeting on September 29, 2023. During that meeting, the Board properly moved into executive session to address potential litigation. Following its return to the public portion of the meeting, the Board passed a resolution providing its support for the State Board of Education's pending litigation regarding the constitutionality of House Bill 33, and a resolution to join as a named plaintiff in that litigation. Board president Barnes executed retention letters with UB and DFF the following day.

{¶ 14} Appellant does not allege that any of these facts constitute a violation of the OMA. Instead, appellant argues that the Board violated the OMA by (1) authorizing the retention of outside counsel and (2) by authorizing Barnes to execute the retention agreements with UB and DFF during that executive session. He argues that "during the public session of the meeting * * * there was no discussion or debate concerning the engagement of private, outside legal counsel to represent [the Board] in the lawsuit. Thus, the only alternative is that the discussions and the authorization to engage outside counsel * * * occurred in the executive session[.]" Passing a resolution during an executive session constitutes a violation of the OMA. As a result, he argues, the trial court erred in finding that he had not alleged a set of facts in which he could support his claim that the Board violated the OMA by conducting business during the executive session.

8.

{¶ 15} Initially, we note that appellant argues that he alleged the "fact" that the Board conducted business during an executive session. That "fact" is actually an inference from the undisputed facts alleged in his complaint. *See State v. Morales,,* 2022-Ohio-4772, ¶ 45 (6th Dist.), citing *State v. Guidugli*, 2004-Ohio-2871 (1st Dist.) (an inference is "a conclusion which, by means of data founded upon common experience, natural reason *draws from facts which are proven.*") (Emphasis added.). As he had no information as to what occurred during the executive session, appellant could only have inferred that the Board conducted business during the executive session. When reviewing a Civ.R. 12(C) motion, we must make all *reasonable* inferences in favor of the non-moving party. *Walker,* 2017-Ohio-416, at ¶ 19 (6th Dist.). Because the only violation of the OMA alleged in appellant's complaint arises from this inference, our review requires that we determine whether the inference appellant draws from the undisputed facts was reasonable. *Id.* In our de novo review, we find that appellant's inference was not reasonable.

{¶ 16} In its answer, the Board incorporated the blanket purchasing policy authorizing the Board president to enter into agreements with vendors up to a certain monetary threshold. This policy expressly states that a purchase order is authorized, without further Board resolution, for certain permitted, specific purposes provided that the order does not "exceed the line-item appropriation and fund, whichever is less[.]" This policy identifies the permitted purposes as including payments for several professional services, including attorneys. Further, the retention letters show that the

9.

Board was not obligated to pay for any services UB and DFF rendered during the pending litigation. It would be illogical to conclude that these retention agreements would exceed the "line-item appropriation and fund" to render the blanket purchasing policy inapplicable since there was no payment required for the services rendered. Put simply, the Board identified an applicable policy that permitted the retention of outside counsel without any specific resolution, negating appellant's inference that such a resolution had to have been passed during the executive session at the September 29, 2023 Board meeting. Appellant's inference that the Board had to have conducted business during the executive session, therefore, is unreasonable because the record contains facts which negate his conclusion. As this unreasonable inference is the sole basis on which appellant alleges that the Board violated the OMA, we do not weigh this inference in his favor and find that the remaining facts alleged in his complaint failed to state a claim on which relief could be granted and that the Board was entitled to judgment on the pleadings pursuant to Civ.R. 12(C).

{¶ 17} Appellant's argument that the trial court erred in granting the Board's motion is based on two incorrect conclusions. First, appellant argues that the retention of outside counsel could only be accomplished through a specific Board resolution because R.C. 3313.35 establishes that the city law director shall serve as counsel for the Board. Appellant argues that the Board's retention of outside counsel without a publicly passed

resolution would violate the statute.[7]  Appellant's argument ignores R.C. 309.08 and 309.09 that, as the trial court noted, expressly provide for school boards to retain outside counsel without regard to R.C. 3313.35.  As a result, appellant's arguments that the Board had to be represented by the city law director unless it publicly resolved otherwise is incorrect and does not support his inference that the Board violated the OMA.

{¶ 18} It is appellant's reliance on this first conclusion that undermines his second conclusion—that the trial court "inaccurately couched the legal standard as being 'in order to demonstrate a violation of the [OMA, appellant] must demonstrate that either the [blanket purchasing] policy does not apply to this situation, that the Board violated the policy, or that the policy violated the mandates of the Revised Code."  Appellant argues that the trial court focused on the applicability of the blanket purchasing policy rather than whether his complaint alone alleged a claim under the OMA.  This argument ignores that the Board's motion was filed pursuant to Civ.R. 12(C), and allows for the trial court, and this court on review, to consider both the complaint *and* the answer to determine whether appellant's complaint sufficiently alleged a claim.  *Walker* at ¶ 19.  The trial court's statement regarding the blanket purchasing policy merely expressed a finding reflecting the deficiency of appellant's complaint in light of the Board's incorporation of that policy in its answer.

---

[7] We make no conclusion regarding whether R.C. 3313.35 permits the Board to pass a resolution overriding its mandates as that issue is not necessary to resolve this appeal.

11.

{¶ 19} The trial court found that the blanket purchasing policy allowed for the retention of counsel without further action and appellant's complaint offered no facts or reasonable inferences to negate this finding. The trial court did not then, as appellant suggests, find that the complaint failed because it did not allege facts beyond what was necessary to allege a violation of the OMA generally. Rather, the trial court found that appellant did not allege sufficient facts to show that the Board violated the OMA *considering* the properly incorporated blanket purchasing policy pursuant to Civ.R. 12(C). Appellant's entire premise and argument requires consideration of his complaint alone. Civ.R. 12(C) requires, and the trial court properly considered, the Board's answer. Appellant failed to set forth facts or an argument as to why the blanket purchasing policy permitting the Board's conduct was inapplicable and, therefore, the trial court properly granted the Board's motion.

{¶ 20} In sum, we find no support for appellant's argument that his complaint alleged a claim on which relief could be granted. Appellant's complaint infers that the Board had to have conducted business during the executive session in order to retain UB and DFF and to authorize Barnes to execute the retention letters. The Board's answer incorporated the blanket purchasing policy that permitted it to retain UB and DFF without passing a specific resolution. We find appellant's inference that the Board conducted business during the executive session in violation of the OMA is unreasonable as it was not obligated to pass such a resolution. Because the remaining facts alleged in the complaint, without weighing appellant's unreasonable inference in his favor, are

12.

insufficient to support a claim on which relief could be granted, we find that the trial court did not err in granting the Board's Civ.R. 12(C) motion for judgment on the pleadings.

## V. Conclusion

{¶ 21} For these reasons, we find appellant's single assignment of error not well-taken and we affirm the November 13, 2024 judgment of the Lucas County Court of Common Pleas.

{¶ 22} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.